## Appeal of BARTLES-SCOTT OIL CO.

Docket No. 1214.   Submitted May 19, 1925.   Decided June 10, 1925.

1. Under chapter 20, General Statutes of Minnesota, oil inspection fees are payable at the time of inspection.

2. Where, under state law, inspection fees are payable at the time of inspection, the liability therefor accrues at such time, and a taxpayer is not entitled to deduct from its gross income for 1918 inspection fees paid in that year for inspections made in prior years.

3. The time of accrual of state taxes is not affected by the fact that payment thereof was withheld pending the outcome of litigation instituted to test the validity of the taxing statute where its validity was finally sustained.

4. Inventories, accounts receivable and payable, and notes receivable and payable, carried on taxpayer's books and considered in determining its income, justify the conclusion that taxpayer kept its books on the accrual basis, notwithstanding the omission from such accounts of minor items of deferred charges and credits.

*Oscar C. Strand, C. P. A.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

### Before GRAUPNER and TRAMMELL.

This is an appeal from a deficiency in income and profits taxes determined by the Commissioner for the year 1918 in the amount of $3,945.54. Two questions are presented by this appeal: First, whether the taxpayer kept its books on an accrual basis; and, second, whether that portion of the oil inspection fees paid to the State of Minnesota in the year 1918, covering inspections made in prior years, is deductible from gross income for the year 1918. From the pleadings and the stipulations filed at the hearing the Board makes the following

#### FINDINGS OF FACT.

1. The taxpayer is a Minnesota corporation with its principal office at Willmar.

2. During the year 1918 the taxpayer paid oil inspection fees to the State of Minnesota in the amount of $6,190.25.

3. Of this sum the Commissioner disallowed, as a deduction from gross income, fees in the amount of $4,416.50, on the ground that these fees were applicable to years prior to 1918. A part of the tax here involved resulted from the disallowance of this sum.

4. A portion of the additional tax resulted from other adjustments to the income and invested capital of the taxpayer, which adjustments are not here in dispute.

5. The oil inspection fees paid in 1918 were paid upon oil inspected during the years 1914, 1915, 1916, 1917, and 1918. The amounts for the inspection during these respective years were $631.10, $755.66, $1,406.72, $1,623.02, and $1,773.75, a total of $6,190.25. The inspection fees were provided for and arose under and by virtue of chapter 20 of the General Statutes of Minnesota, section 3619 to 3632, inclusive.

6. The inspection fees levied by these sections proved to be in excess of those necessary to pay the cost of inspection, and the legislature of the State of Minnesota therefore made reductions and variations in the amount of the inspection fees at its various sessions. The dates when the inspection fees were payable, however, remained constant.

7. During the years 1914 to 1918, inclusive, the taxpayer received a statement from the State of Minnesota each month with respect to the charge made by the State as a result of oil inspections. Payment was made monthly for a few months in 1914, but thereafter, owing to the seemingly excessive rates of the fees imposed by the above statutes, which rates were subsequently recognized to have been too high for the purpose for which levied, the taxpayer and various other corporations resisted the payment of the inspection fees. The resistance of payment by this taxpayer continued until sometime during the year 1918.

8. On December 9, 1918, the Supreme Court of the United States in the case of the *Pure Oil Co.* v. *State of Minnesota*, 248 U. S. 158, upheld the validity of the statutes under which inspection fees were levied. Thereupon, the taxpayer made the aforementioned payment of inspection fees.

9. During the years here involved the taxpayer kept inventories, had accounts receivable and payable, and notes receivable and payable, and determined its income by consideration of these items. Some deferred items and some prepaid items as of December 31 of each of these years may have been excluded.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GRAUPNER: The first question—that of whether the taxpayer kept its books of account on an accrual basis—is not difficult of solution. We found as a fact, above, that the taxpayer carried inventories and notes and accounts receivable and payable on its books, and in determining its income these items were given consideration. In view of these facts we can not hold otherwise than that the taxpayer operated on an accrual basis. The mere fact that some deferred charges and credits to income may not have been included in the accounts carried can not destroy the principle upon which the system of accrual bookkeeping is based.

The second question—whether the taxpayer is entitled under section 234 of the Revenue Act of 1918 to deduct from gross income for 1918 that portion of the fees paid in that year for inspections made in prior years—depends upon when the liability for payment accrued. The statute levying the inspection fees provides that "Such fees shall be payable at the time of inspection: * * *." These fees are plainly in the same category as state taxes and will

be so considered here. The fact that a number of corporations contested the validity of the act imposing the fees has no effect upon the date when they were payable. Throughout the years here involved the fees were payable at the time of inspection. In the *Appeal of Jamestown Worsted Mills*, 1 B. T. A. 659, we stated in our opinion that a tax which is due and owing has accrued. In line with that decision we hold here that the inspection fees accrued at the time the inspections were made and that the amount paid in 1918 to cover inspections made in prior years is not deductible from gross income in the year 1918.